Labamokb, Judge,
delivered the opinion of the court:
Plaintiff, an employee in the classified civil service and entitled to veterans’ preference, was separated from his grade GS-12 position with the Reconstruction Finance Corporation as the result of a reduction in force. His claim is founded upon an alleged violation of the procedural guarantees of the Veterans’ Preference Act, 5 U.S.C. 863, the regulations promulgated pursuant thereto, 5 CFR (1952 Supp.) 20.5, and upon the alleged arbitrary and capricious action of the officials of the Reconstruction Finance Corporation in abolishing plaintiff’s position and reassigning him to the same abolished position in order to effect a wrongful separation under the guise of a reduction in force.
The questions presented are: (1) Were the actions of the Reconstruction Finance Corporation officials in abolishing plaintiff’s position, reassigning him to the same abolished position and then separating him in a reduction in force, arbitrary, capricious and in bad faith; (2) were any of the procedural requirements of the Veterans’ Preference Act or of the regulations of the Civil Service Commission promulgated thereunder violated, making the civil service review improper because it was based upon a finding that plaintiff was “* * * considered for and made an offer of reassignment to another position * * which statement was in error.
At all times plaintiff was given an efficiency or performance rating of either “good” or “satisfactory.” Never was plaintiff notified of any action, nor was any action taken to separate him for inefficiency.
On May 31,1945, plaintiff transferred from the Treasury Department, Procurement Division, to the Foreign Economic Administration in the position of buyer, CAF-12. Plaintiff’s division and function in the Foreign Economic Administration was transferred by Executive Order to the Reconstruction Finance Corporation on October 20, 1945.
Upon his entry to duty with the Reconstruction Finance Corporation plaintiff was assigned to the U.S. Commercial Company as a buyer at Reconstruction Finance Corporation Agency grade 15. On July 1,1946, under a pay adjustment plaintiff was arbitrarily reclassified to Reconstruction Finance Corporation Agency grade 14, with no immediate *208 resulting loss of pay. On March 23, 1947, plaintiff was reassigned from the U.S. Commercial Company to the Agency Division of Eeconstruction Finance Corporation as an examiner, grade 14. Plaintiff’s Eeconstruction Finance Corporation Agency grade was converted to Classification Act grade GS-12, on October 30,1949.
On April 16, 1950, plaintiff was reassigned from the position of examiner in the Agency Divison to the grade GS-12 position of cost analyst, PE-439, in the Office of Production, Synthetic Eubber Division, Production Branch, Production Control Section of Eeconstruction Finance Corporation in Washington, D.C.
This position was established by the Production Control Section as a new position and designated with the Civil Service Occupational Series Designation 501. There was no civil service standard published or written for this particular position which served as a guide to enable Eeconstruction Finance Corporation to classify plaintiff’s position as series 501.
Every person in the branch who was directly involved in the cost analysis function was given a reduction in force notice and either separated or reassigned to a new position except plaintiff. Had plaintiff been given the same treatment as other employees, the opportunity to be considered for reassignment to another position in the same or lower level in the Comptroller’s Office to which the Eeconstruction Finance Corporation’s function was transferred, would have been accorded him. Instead, plaintiff was reassigned and retained in an identical position to the one which had just been abolished by the reduction-in-force action. This placed plaintiff in the absurd position of having only himself to compete with in any future reduction in force.
Since the separating officials of the Eeconstruction Finance Corporation took the position that plaintiff’s assigned job had been abolished, no work was assigned him. As a matter of fact, plaintiff’s desk was even removed and relocated on a different floor in a different office. When plaintiff complained of this action, he was told by the Director of Personnel that arrangements were being made to put him in another job. Instead, on June 4, 1953, plaintiff was given *209 a notice of proposed separation through reduction in force. Effective July 6,1953, plaintiff was separated from the rolls of the Reconstruction Finance Corporation in spite of the fact that plaintiff had 19 and one-half years of Government service.
When the circumstances of plaintiff’s separation are coupled with the testimony of William Carley Fisher, the Reconstruction Finance Corporation’s Director of Personnel, to the effect that everybody who ever had supervision of plaintiff wanted to get rid of him, we are compelled to the conclusion that plantiff was a victim of a scheme to ultimately achieve that end by abolishing his position and still retaining him in the abolished position.
An employee with 19 and one-half years of Government service with a rating at all times of either “good” or “satisfactory” is entitled to better and different treatment. Thus we must conclude that the action of the officials in transferring plaintiff to an abolished position was arbitrary and capricious and in bad faith.
Plaintiff further contends that in his appeal to the Civil Service Commission he detailed all the facts of his 1952 assignment, pointing out how these resulted in too narrow a competitive group. The decision of the Appeals Examining Office of the Commission, dated February 16,1954, failed to consider this contention, and the decision of the Commission’s Board of Appeals and Review affirming the above found, among other things, “* * * that you (plaintiff) were considered for and made an offer of reassignment to another position on the basis of your qualifications and experience.”
The Commission’s regulations, 5 CFR (1952 Supp.) 20.5 (b) (2) and (d) require such offers of reassignment and have the binding effect and force of law. Service v. Dulles, 354 U.S. 363.
The record, however, conclusively shows that no such offer of reassignment was ever made[1] and this failure constitutes *210 a violation of the Veterans’ Preference Act and the Civil Service regulations. Since plaintiff’s discharge was not consistent with the regulations, he was not validly separated, and recovery of back pay must follow. Crocker v. United States, 130 Ct. Cl. 567; Knotts v. United States, 128 Ct. Cl. 489; Stringer v. United States, 117 Ct. Cl. 30.
Accordingly, the plaintiff is entitled to recover his back pay from July 6, 1953, the date of separation, to date of judgment, at the rate of pay he was receiving on the date of discharge, together with legislative and periodic step increases provided by law and regulations, less any outside earnings. Crocker v. United States, supra; McGuire v. United States, 145 Ct. Cl. 17; Harris v. United States, 149 Ct. Cl. 15. Plaintiff is also entitled to recover any annual leave which would have accrued to him during this period. Hynning v. United States, 141 Ct. Cl. 486. Judgment will be entered to that effect.
The exact amount of recovery will be determined pursuant to Rule 38(c) of the Rules of this court.
It is so ordered.
LittletoN, Judge {Bet.), and Durfee, Judge, concur.
Jones, Ohief Judge, dissents in part as to the legislative and periodic-step increases for the reasons stated in his dissent in McGuire v. United States, supra.
Whitaker, Judge, took no part in the consideration and decision of this case.
FINDINGS OF FACT
The court, having considered the evidence, the briefs and argument of counsel, and the report of Trial Commissioner Currell Vance, makes the following findings of fact:
1. Plaintiff is a preference eligible as defined by the Veterans Preference Act of 1944, as amended, with a ten-point disability preference, and at the time of his separation from Government employment on July 6, 1953, was a Classified Civil Service Employee of the Reconstruction Finance Cor *211 poration (hereafter “RFC”) headquarters in Washington, D.C.
2. At all times pertinent to the case, plaintiff had an efficiency or performance rating of “good” or “satisfactory”.
3. On May 31,1945, plaintiff transferred from the Treasury Department, Procurement Division to the Foreign Economic Administration in the position of buyer, CAF-12. Plaintiff’s division and function in the Foreign Economic Administration was transferred by Executive Order to the RFC on October 20, 1945.
4. Upon Ms entry to duty with RFC plaintiff was assigned to the U.S. Commercial Company as a buyer at RFC Agency, grade 15. On July 1,1946, under a pay adjustment plaintiff was arbitrarily reclassified to RFC Agency grade 14, with no immediate resulting loss of pay. On March 23, 1947, plaintiff was reassigned from the U.S. Commercial Company to the Agency Division of RFC as an examiner, grade 14. Plaintiff’s RFC Agency grade was converted to Classification Act grade GS-12, on October 30, 1949.
5. On April 16, 1950, plaintiff was reassigned from the position of examiner in the Agency Division to the grade GS-12 position of cost analyst, PR-439, in the Office of Production, Synthetic Rubber Division, Production Branch, Production Control Section of RFC in Washington, D.C.
6. This position was established by the Production Control Section as a new position and designated with the Civil Service Occupational Series Designation 501. There was no Civil Service standard published or written for this particular position which served as a guide to enable RFC to classify plaintiff’s position as series 501.
7. The former Director of Personnel for RFC testified that plaintiff was reassigned from the Agency Division to the Synthetic Rubber Division because of the numerous complaints that plaintiff was unable to do the work, did not get along with his supervisors, was uncooperative, and had a poor leave record. His efficiency rating for the period immediately prior to his reassignment was, nevertheless, “good”.
8. Several months after his assignment to the Synthetic Rubber Division, plaintiff had considerable difficulty in receiving work assignments of the quantity and quality which *212 be felt were commensurate with his GS-12 position. Plaintiff not only complained, in writing, but he directed his problem in person to the attention of each of his immediate supervisors, the Chief of Production of the Synthetic Rubber Division, the Director of Personnel, and at least two different Chairmen of the Board of RFC. Following his complaints, plaintiff was given some work assignments.
9. Plaintiff’s supervisors in Synthetic Rubber in turn contended that plaintiff was incapable of doing the work, was too slow, had a poor leave record, and was not punctual. His supervisors and the RFC personnel officials considered plaintiff’s work performance during the period of his service in the Synthetic Rubber Division, from 1950 to 1952, as unsatisfactory. Nevertheless, these same officials assigned plaintiff a performance rating of “satisfactory”. Plaintiff’s immediate supervisor and chief of the branch testified that he did not consider that plaintiff should remain as a member of his branch.
10. The functions of plaintiff’s branch, the Production Control Branch, included coordination of production schedules, cost analysis of cost statements and general economic analysis of the approximately 28 synthetic rubber plants owned by the Government. Plaintiff’s duties as a cost analyst consisted of general cost analysis work and problem solving designed to establish maximum efficiency and economy in the operation of the synthetic rubber program throughout the country.
11. During the years 1952 and 1953, RFC was involved in a major reorganization, transfer of functions and resulting reduction in force. In April or May 1952, plaintiff’s branch chief, Earl R. Gurtler, called a meeting of the entire Production Control Branch. He advised the entire branch that the cost analysis function of the branch was to be discontinued. He read from a letter wherein the operative officials of RFC requested the Office of Personnel to abolish certain positions occupied by specific individuals. Plaintiff’s position was among those which were to be abolished. All present were advised that the cost analysis function was being transferred to the Controller’s Office of the RFC, and the individual members of the branch would be transferred *213 or separated, but that the branch chief would do everything he could to see that the individuals were taken care of.
12. The entire cost analysis function, the function to which plaintiff was assigned, was eliminated from the branch and transferred to the Controller’s Office. The coordinating function involving scheduling of rates and the economic analysis function remained in the Production Control Branch.
13. All of the personnel working in the Production Branch in April and May of 1952 were involved in the reorganization and reduction in force.
(a) William D. Cross, a cost analyst, was given a reduction in force notice and separated.
(b) John L. O’Brien, an accountant, was given a reduction in force notice and reassigned to the Office of Controller.
(c) Lillian V. Morris, an accountant, was given a reduction in force notice and was separated.
(d) Donald B. Farrar was reassigned to the Controller’s Office.
(e) Anderson A. Murphey was given a reduction in force notice and offered a position in the Controller’s Office, which he did not accept.
(f) Begina B. Hannon was reassigned to another section.
(g) Daniel P. Mularkey, an accountant, was given a reduction in force notice but after a personnel interview was transferred to another division of Synthetic Bubber.
(h) Thomas M. Binewalt, an accountant in the 501 series, was given a reduction in force notice, which was later canceled and he was reassigned in the same section under Mr. Gurtler, but as a commodity-industry analyst (Bubber), Series 1151-1.
(i) Frances C. Crudup, a clerk, as a result of the reorganization was reassigned to her same position in the same branch.
Every person in the branch who was directly involved in the cost analysis function was given a reduction in force notice and either separated or reassigned to a new position except plaintiff. These separations and reassignments were necessary because this entire function in the Production Branch had been abolished. The cost analysis phase of the *214 synthetic rubber operation was integrated into the fiscal accounting and operational administrative accounting phases of the Controller’s Office and several Production Branch employees were transferred with the fmiction.
14. Although the cost analysis function was eliminated from the Production Control Section, plaintiff received no reduction in force notice, no 30-day notice that his position was abolished, and no reassignment to the Controller’s Office to which the function was transferred, but instead, on June 19, 1952, plaintiff received only a personnel action reassigning him on June 22,1952, to the same position (cost analyst 501), in the same Production Control Section.
15. There were more positions and a greater area for competition and reassignment in EFC in 1952 than in 1953. Accordingly, an employee might be placed in one area or level on a 1952 retention register and be on an entirely different register with a different area of competition in 1953.
18. At no time subsequent to his assignment on June 19, 1952, was plaintiff given any work assignments whatsoever. Plaintiff immediately complained orally and in writing to his immediate superiors, personnel officials, and the Administrator of EFC. The EFC operating officials, such as plaintiff’s innnediate superiors would not give plaintiff any work assignments after May 1952, because plaintiff’s position and function had been abolished, and plaintiff did not, according to their testimony, qualify for performance of the remaining functions of the branch. Despite this course of events, personnel officials of EFC refused to admit that plaintiff’s job was abolished and therefore refused to reassign him to another position or branch. This placed plaintiff’s immediate supervisor in a confused position and he did nothing about the situation, and testified that he took the position that no work was to be assigned to plaintiff because his position and function had been abolished.
17. On August 22, 1952, the Director of Personnel issued to plaintiff a notice of a change in this organization designation from Office of Production, Synthetic Eubber Division, Plant Operations Branch, Production Control Section, to Office of Synthetic Eubber, Plant Operations Branch, Production Control Branch. Plaintiff retained the same super *215 visor who continued to consider plaintiff’s position as abolished and refused to give plaintiff any work assignments.
18. Sometime in April 1953, plaintiff’s desk was removed from its location in the Production Branch to which he was assigned and relocated on a different floor in a separate office. When plaintiff again complained to the Director of Personnel about this move and lack of work, the Director of Personnel told plaintiff he was making arrangements to put plaintiff in another job.
19. On June 4, 1953, plaintiff was given a notice of proposed separation on July 6,1953, through reduction in force. Said notice stated in part:
Due to the curtailment of activities in Keconstruction Finance Corporation, we regret to advise you that your position has been abolished.
Effective at the close of business on July 6, 1953, plaintiff was separated from the rolls of EFC. At the time plaintiff had 19x/2 years of Government service.
20. The controlling factor over plaintiff’s position on the retention register for reduction in force was the job to which he was assigned. In this case, plaintiff, who was at the time of separation assigned to a position which had been abolished one year previous to the preparation of the register, was listed on the retention register all by himself. No other employee of EFC was listed as being in competition with plaintiff. EFC personnel officials assigned as the reason for so listing plaintiff the fact that his job was so “unique”. On retention registers which were prepared for previous years, plaintiff had been listed as competing with other EFC employees some of whom were still employed by EFC at the time of plaintiff’s separation in July 1953.
2Í. On June 5, 1953, plaintiff appealed his separation by a letter to the Director of Personnel of EFC, which stated as follows:
Deference is made to your letter to me dated June 4, 1953, which includes that my position in the Deconstruction Finance Corporation has been abolished. This position is that of Cost Analyst, Grade GS-12, at a salary of $1,640 per annum, in the Office of Synthetic Eubber, Plant Operations Branch, Production Control Section.
*216 The second paragraph of your letter states: “Your reassignment rights under provisions of the Civil Service Commission retention preference regulations have been reviewed, however, we are unable to oiler you reassignment.” This condition of inability is contrary to the understanding you gave me only two weeks ago to the effect that I would obtain a comparable grade reassignment with satisfactory volume of duties, as you know I have been without assignment of any duty for more than a year, concerning which I have constantly complained, to you and others, together with the fact of my physical removal alone to the ninth floor on May 14, 1953, from the work of the Production Control Section on the twelfth floor.
The eighth paragraph of your letter points out certain appeal procedure to be followed in the event I feel that there has been a violation of my rights under military preference laws or regulations of the Civil Service Commission, and that I may appeal to you in writing within five days after receipt of your letter, dated June 4, 1953. Accordingly, as I regard that my rights referred-to have been violated, I will appreciate your acceptance of this letter as my appeal, because I believe I have rights to other positions, of a type of work which I have performed for the Reconstruction Finance Corporation and the Federal Government for many years; and otherwise I have not been properly reached for separation.
I would like to have a detailed explanation of the procedure followed in reaching me for separation, with a statement informing me just how other Grade GS-12 employees possessing fewer retention points were retained in preference to myself.
I shall appreciate receiving your decision as to correction of the situation or reassignment at the earliest opportunity.
Thank you in advance of your attention to this matter.
22. On June 17, 1953, the Director of Personnel denied the appeal in a letter to plaintiff stating as follows:
Your letter of June 5 appealing the reduction in force action taken in your case by the Corporation has been received.
Since the questions raised in the second paragraph of your letter do not relate to the action which you are appealing, I shall limit my reply to a discussion of your appeal.
*217 I have carefully reviewed the handling of yonr case and found that you were properly reached for separation in your competitive level.
Insofar as your rights to reassignment are concerned, there are no positions at the Grade 12 level available, held by persons in a lower retention sub-group, for which you are eligible to be considered, nor are there any positions in existence at lower grades to which you are eligible to be reassigned.
I regret that because of this situation, it is not possible to offer you reassignment, or to take any other favorable action in your case.
If you feel that your rights as a veteran have been violated because of the action we have taken, you have the further right of appeal under the provisions of Section 12 of the Veterans Preference Act of 1944, as amended, to Mr. L. W. Valentine, Eoom 339, Main Civil Service Commission within ten days from the date of receipt of this letter.
23. On June 26,1953, plaintiff appealed to the Civil Service Commission (hereinafter referred to as the Commission) in Washington, D.C. This appeal was supplemented by a letter of July 3, 1953, wherein plaintiff submitted a list of positions in RFC which he contended he was qualified to perform, rediscussed his qualification, background and position classification and directed attention to the fact that the Synthetic Rubber program was expanding rather than being curtailed. After several requests were made by the Commission, plaintiff on September 26, 1953, filed a Form 57, Federal Employment Application, with the Commission and requested a personal hearing.
24. The Civil Service Officials and Investigators who reviewed plaintiff’s appeal testified that they checked plaintiff’s reduction in force for procedural errors and found none. They also testified that they reviewed the merits of plaintiff’s appeal to ascertain if he were qualified for assignment to another position held by an employee with lower retention rights. In conducting this investigation and review, the Commission officials relied upon plaintiff’s official Form 57, his job description, his job assignment and the work he did to ascertain whether he was qualified for another position. These Commission officials testified that plaintiff informed them in person that he would accept no position below grade *218 GS-12, and thus the Commission investigation and review was limited to competing positions at this level and no review of lower grade positions was made. Plaintiff, on the other hand, testified that in a telephone conversation with Commission Investigator Bergman, he advised the Investigator that he would reserve his opinion on lower grade choice until his grade 12 appeal had been decided. No review of any positions lower than grade 12 was made to ascertain whether plaintiff could qualify, and NFC had previously determined that no position existed at a lower grade to which plaintiff was eligible for reassignment.
25. In November 1953, plaintiff was granted a hearing by the Commission. In a post-hearing memorandum plaintiff cited the claimed errors in his reduction, and argued in part as follows:
The second of such errors arose in connection with reorganization in 1952. This was given as the reason for “reassignment” of appellant on June 22, 1952 (Exhibit E). It was not a reassignment in fact but a transfer of functions performed by appellant without transferring him with the functions. While the applicable personnel action recites that it was subject to post audit and correction by the Civil Service Commission, appellant is informed and believes that it was not so acted upon by the Commission. This reorganization neither curtailed nor changed the duties and functions of existing work for which appellant was qualified; at most, it merely shifted them around. The reorganization is set forth in Exhibits C-3, C-4 and C-5. It will be noted that the plan called for a Materials Procurement Branch and a Plant Operations Branch. In each there are defined duties of the exact character of those performed by appellant over many years. Even in the other branches, there are defined duties of the character long performed by appellant. There was nothing inherent in the reorganization that could properly justify denial of employment to the appellant. When the functions were shifted, he was entitled to follow them. Obviously the claimed justification rests solely upon his 501 class series designation — accounting and fiscal. This placed him in an impossible predicament unless, as he contends, the agency is free to ignore form and determine his rights upon the basis of substance. In the reorganization, he might have been transferred to the Accounting Division had he in fact been an accountant.
*219 Others from the Synthetic Rubber Division were so transferred, but appellant was foreclosed in that direction because, despite his accounting and fiscal designation he was not an accountant and made no claim to qualification as such. Failure to transfer him to the Accounting Division was right as a matter of substance, though contrary to his formal designation. Conversely, failure to give him an administrative position in the reorganized setup was wrong as a matter of substance, although in accord with his formal class series designation. Thus the second formal error occurred, giving color as a matter of form to the present position of the agency but still wholly lacking in substance.
The third error in the series was the reassignment of appellant as a claimed part of reorganization on June 22, 1952, with said 501 accounting and fiscal designation to the Plant Operations Branch (Exhibit E). This seems to have been an extreme attempt on the part of the agency to give effect to his class series designation, even though it denied effect to the substance of his qualifications. There were no duties for an accountant in that branch and therefore no position for an accountant. Indeed, appellant was then the only person in the Synthetic Rubber Divison with a 501, accounting and fiscal class series designation.[2]
This reassignment was mere form. This is indisputably established by the fact that for more than a year after his transfer on June 22, 1952, until his separation from the service on July 6,1953, he had no duties whatever. Although he was able, ready and willing to work, and although he frequently asked for work, he was, in fact, given no work to do and performed no service whatever throughout this period. The assertion in support of his removal that his position was abolished was, therefore, only continued adherence to form. There was no abolishment of any functions or duties but only removal of appellant from the vacuum, so to speak, in which he had been kept involuntarily for more than a year. This completed the third step hi the chain of formal actions giving color to the present position of the agency but still without substance.
The RFC filed a reply memorandum detailing its position as to plaintiff’s lack of qualifications for existing grade 12 *220 positions, but failed to discuss plaintiff’s contentions raised concerning the 1952 personnel action. In a reply memorandum dated December 29, 1953, plaintiff specifically directed attention to the failure of EFC to respond to plaintiff’s contentions about the 1952 action.
26. By decision dated February 16,1954, the Chief of the Appeals Examining Office of the Commission ruled as follows:
Further reference is made to the appeal submitted by you against the reduction in force action of the Ee-construction Finance Corporation in separating you from your position of Cost Analyst, GS-12 group I-A.
A review of your case has failed to disclose any irregularities under the Eetention Preference Eegulations governing reduction in force actions.
Investigation disclosed that the competitive area and the competitive level were in accord with the regulations, that the retention register was properly set up, that your name was reached in order, that you received a valid notice, and that you were considered for and made an offer of reassignment to another position on the basis of your qualifications and experience.
Careful consideration has been given to the questions raised by you and your representative in your appeal and at the hearing. Particularly those questions relating to whether you could be separated from a position which had actually been abolished and did not exist in fact, whether your retention register from which you were given a reduction in force notice was properly set up, and your entitlement under the regulations to an offer of reassignment to a position not lower than your grade, namely, GS-12, on the basis of your experience and qualifications.
A retention register is set up to include the names of all employees of a particular grade that are officially assigned to and whose official duties and responsibilities as set forth on classification sheets are sufficiently alike that the incumbents are commonly interchangeable. In your case, it was found that you were officially assigned to the position of Cost Analyst, G-12, and that there were no other positions in that grade in the agency with duties and responsibilities sufficiently like those or your own as to indicate that there were other employees in direct competition to you and therefore belong in the same retention register with you. Your name was therefore properly alone on the retention register and prop *221 erly reached for separation from your position. Competition for retention on job (competing employees) is determined from the official assignments of employees as evidenced by classification sheets which support their salaries and therefore gives no recognition to temporary detailing to other duties.
A Group I employee is entitled under the Retention Preference Regulations to receive a reasonable offer of reassignment to a continuing position occupied by a person of lesser retention rights for which he is qualified and which he can take over and assume the duties and responsibilities without undue interruption to the work program of the office. In making an offer of reassignment, the agency is not required to displace any employee in a grade higher than that of the person being considered for reassignment. In other words, an employee entitled under the regulations to an offer of reassignment is not entitled to one that would result in a promotion. Since you have advised a representative of the Commission that you did not want consideration, for a position of a grade lower than your own, namely, GS-12, and there is no evidence that you were promoted through your grade GS-12 to a higher grade, entitlement under consideration for reassignment is therefore confined to positions in your grade occupied by persons of lower subgroups I-B and below.
The Commission has carefully examined the two lists of names submitted by you — one of 58 persons, accompanying your Form 57, the other incorporated in your brief submitted by you at your hearing. Many of these were veterans in your own subgroup, I-A, many were in higher grades, and some were in classes of employment in which you have had no experience or qualifications. Of the remainder, the Commission selected those in which there seemed to be the greatest likelihood of your being qualified and examined your qualifications for these positions. It was found that you were not qualified under the examining standards for the position of Production Specialist (Syn. Rubber), GS-12 or Budget Analyst (Prod.), GS-12. It is believed, therefore, that you do not have experience or qualifications to assume the duties and responsibilities of any of the grade GS-12 positions in the agency occupied by persons classified in lower subgroups than your own without training or causing undue interruption to the work activities of the organization.
Based on the foregoing, since a review of your case failed to disclose any irregularities under the Retention *222 Preference Regulations, we are obliged to inform you that your appeal cannot be sustained. No further appeal to this decision will be entertained unless it is submitted to the Commissioners, U.S. Civil Service Commission, Washington 25, D.C. within seven (7) days after receipt of this decision. Additional representation should be made in writing and submitted in duplicate with the appeal to the Commission.
Plaintiff never received an offer of reassignment, and the statement contained in the decision that an offer of reassignment to another position was made to plaintiff on the basis of his qualifications and experience is in error.
27. By letter dated February 21, 1954, plaintiff appealed to the Commission’s Board of Appeals and Review. On March 5,1954, he submitted a complete statement of his position and documented the statement with numerous exhibits.
28. By decision dated October 7, 1954, the Board of Appeals and Review of the Commission concluded as follows:
Reference is made to your further appeal from the decision of the Appeals Examining Office approving the action of the Reconstruction Finance Corporation in separating you from your position of Cost Analyst, GS-12, Office of Synthetic Rubber, effective July 6, 1958, in a reduction in force.
The Board of Appeals and Review has given careful consideration to all the facts in your case. Based upon these facts it has been determined that you were properly listed on the retention register and correctly reached for action since no employee in your competitive area and level with less retention standing was retained in preference to you. The agency advised you that there were no positions at the grade GS-12 level available, held by persons in a lower retention subgroup, for which you were eligible to be considered, nor were there any positions in existence at lower grades to which you were eligible to be reassigned. Consequently, no offer of reassignment was made.
At the time you were reached for action you were in grade GS-12. The Commission’s Retention Preference Regulations which govern reductions in force were not intended to be used as a means of securing a promotion. These regulations sepcifically point out that no agency shall be required to promote an employee reached in a reduction in force, and no agency shall be prohibited from taking such administrative action. *223 Since yon bad no mandatory right of reassignment to a position higher than GS-12 under governing Commission Regulations, the fact the agency did not offer you reassignment to a position above your GS-12 level can not be used as any proper basis for setting aside your reduction in froce.
The facts of record disclose that during the course of the investigation in connection with your initial appeal to the Commission you advised the investigator that you would not be interested in a position lower than grade GS-12. Your qualifications have been reviewed by the Examining Division for a number of continuing positions in the agency in your grade level, GS-12. However, no positions were found to which you may have been entitled to retention in preference of the present incumbent.
It is the responsibility of an employing agency to determine the need for a reduction in force and for identifying functions and work programs to be curtailed or eliminated. If you believe the agency officials made an administrative error in determining your position was no longer required, your only recourse would be an appeal through the grievance channels of the Reconstruction Finance Corporation. The Commission would not have jurisdiction over such matters.
Since you were accorded an oral hearing before the Commission’s Appeals Examining Office during the initial consideration of your appeal, you are not entitled to a further hearing as a matter of right. There is no indication in the record that another hearing would be of advantage to either you or the Government. Accordingly, your request in this connection has not been granted.
Based upon the foregoing considerations, there is no proper basis whereby we may sustain your appeal. Accordingly, the Board has affirmed the reduction-in-force action effected in your case by the Reconstruction Finance Corporation.
29. Since his separation, plaintiff has made an extensive effort to locate employment, both in the Government and in private business, without success. Plaintiff reached age 63 in November 1959.
30. Although RFC, as an agency, was abolished on June 30, 1957 (Sections 6 and 7 of the Reorganization Plan of 1957), many of its functions and personnel have been transferred to continuing agencies such as Federal Facilities Cor *224 poration, and the Office of Defense Lending of the Treasury Department, among others. Employees who served with plaintiff in RFC hi 1952 and 1953 were still employed by the aforementioned agencies as of the end of 1957.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c).
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on January 13, 1961, that judgment for the plaintiff be entered for $67,051.08.

 While there is some apparent conflict in the testimony as to whether plaintiff was willing to accept a change in position to a lower grade, plaintiff testified he informed Commission Investigator Bergman that he would reserve his opinion on lower grade choice until his grade 12 appeal had been decided. At any rate, no review of any positions lower than grade 12 was made to ascertain whether plaintiff could qualify and, as stated, the regulations required such investigation and offer of reassignment.

 TMs resulted in the unusual situation that at the time of appellant’s removal In July 1953, he was placed in a competitive group consisting only of himself — far too narrow, of course, to give any reasonable effect to regulations governing competitive areas.