Jones, Senior Judge,
delivered the opinion of tbe court:
Plaintiff is a clerk-stenographer who was separated from her grade GS-4 position with the Norfolk, Virginia, facility of the Federal Aviation Agency (hereinafter “FAA”) on August 29,1963, because of a reduction in force. At the time of her discharge plaintiff was a non-veteran career civil servant who had been in the position she then held for 4% years. In this suit plaintiff asserts that her dismissal was arbitrary *266 and contrary to law, and claims judgment against tbe Government for her loss of pay.
The August 1963 reduction in force at Norfolk was the end result of a program by the FAA to phase out and consolidate nine Air Traffic Control Centers. The FAA facility at Norfolk, prior to this consolidation, performed a dual operation: (1) control of aircraft operations to and from local airports via the local control tower, and (2) control and guidance of aircraft enroute between airports other than the local Norfolk airfields, i.e., an Air Eoute Traffic Control Center. These two missions were performed by a combined Center/Tower; the controlling being done by a number of employees who were called Air Traffic Controllers.[1]
The consolidation affected only the Air Boute mission of the Norfolk Center/Tower. The FAA decided to combine this mission with the Washington Air Boute Center at Lees-burg, Virginia. Both of these facilities were located within Begion 1 of the FAA which included the eastern seaboard States from Virginia northward. This consolidation caused the control of all enroute traffic in the general area of Maryland, Virginia, eastern West Virginia, and eastern North Carolina to be centralized in one place — Leesburg, Virginia. However, all local air controlling was left with the various local towers and so the Norfolk facility retained its local control tower mission.
The Leesburg, Virginia, consolidation required many of the Norfolk air controllers to be transferred to Leesburg. The rest remained at Norfolk to conduct local tower operations. The FAA determined which air controllers would be transferred by applying a retention-point system. No administrative or clerical personnel were transferred. The reduced staff of air controllers remaining at Norfolk, however, caused a lessening of the overall administrative and clerical workload. This is what led to plaintiff’s discharge.
At the time of this consolidation there were three individ *267 uals at Norfolk performing the administrative and clerical duties for the combined Center/Tower. The senior position in this category was that of Administrative Assistant, a grade GS-7, occupied by Mrs. Reece. The two other positions were a grade GS-5, Secretary (Stenographer), occupied by Mrs. Loher, and a grade GS-4, Clerk-Stenographer, occupied by the plaintiff. The Administrative Assistant was responsible for the administration, housekeeping and personnel functions necessary to the operation of the Norfolk ■facility. The duties of the two stenographers included taking dictation, maintaining files, reading and routing mail, and other normal secretarial functions.
As a result of the relocation and decreased workload at Norfolk tower, the position of Administrative Assistant was abolished. Under applicable reduction-in-force procedures, the Administrative Assistant was permitted to retreat to the GS-5 Secretary (Stenographer) position, and the latter was in turn allowed to retreat to the GS-4 Clerk-Stenographer position held by the plaintiff. The plaintiff had fewer retention points than either of these other two individuals. Since there were no other suitable vacancies for the plaintiff in the local commuting area to which she possessed retreat rights, she was separated by reduction in force on August 29,1963.
On October 23,1963, the Regional Office of the Civil Service Commission, after a full and complete investigation of the matter here in dispute, denied plaintiff’s appeal. This decision was upheld by the Board of Appeals and Review on May 7,1964, after a further investigation of the case. The Civil Service Commission sustained this decision on August 12,1964, and suit was instituted in this court on September 10, 1964 for loss of pay due to the alleged unlawful separation.
In challenging her separation, the plaintiff does not allege any procedural violations. The required 30 days’ notice was given and all appeal rights have been granted. What the plaintiff does allege as grounds for recovery is that the FAA violated its own regulations and those of the Civil Service Commission in separating her, and also that these regulations were arbitrarily applied. If either of these two allegations *268 cab. be substantiated by tibe plaintiff, then ber separation was unlawful and sbe must be awarded ber lost pay. Smith v. United States, 151 Ct. Cl. 205 (1960).
Tbe plaintiff bases ber contention on two grounds: (1) That tbe relocation of tbe enroute mission from tbe Norfolk Center/Tower to Leesburg was a transfer of function as defined in tbe applicable Civil Service Regulations and that tbe position of Administrative Assistant was identified with this function and should have been transferred to Leesburg with tbe enroute function. Tbe Administrative Assistant could therefore not have set off the chain reaction at Norfolk thait caused plaintiff to lose her j ob. (2) That tbe position of Administrative Assistant is not one of tbe “general clerical, typists, or other positions which traditionally have been filled on a local basis * * *”[2] and so is not in tbe same competitive area with tbe two stenographic positions at Norfoik. Rather, tbe Administrative Assistant is allegedly included within: tbe broad general competitive area in FAA Region 1 which includes all employees except “general clerical, typists, * * Therefore, since one cannot normally exercise retreat rights outside his or ber competitive area, plaintiff contends that even if Mrs. Reece did not have to relocate to Leesburg, she should not have been allowed to retreat to the stenographic position. The plaintiff would therefore still have her job since both stenographic positions remained intact after the reduction in force at Norfolk. Plaintiff therefore contends that the FAA acted arbitrarily *269 and contrary to its own regulations in separating her from her position.
Turning to plaintiff’s first contention, the applicable Civil Service Regulations, Part 20, entitled “Retention Preference Regulations For Use In Reduction In Force [Revised],” 5 C.F.R. (January 1,1963 supp.), define a transfer of function as meaning “the transfer of the performance of a continuing function from, one competitiva area and its addition to one or more other competitive areas, or the movement of the competitive area in which the function is performed to another commuting area.” [Emphasis added.] § 20.103(b). Plaintiff argues that the relocation of the Norfolk enroute mission to Leesburg falls within this definition of a transfer of function and that for this reason section 20.303(g) should have been applied to the reduction in force. It provides, in part, that:
Before any reduction in force is made in connection with the transfer of any or all of the functions of an agency to another continuing agency, all competing employees in positions identified with such function or functions shall be transferred to such continuing agency * * *. [Emphasis added.]
If this regulation dealing with the transfer of a function had been properly applied, asserts the plaintiff, then the Administrative Assistant would have transferred to Leesburg and could not have retreated to the lower stenographic position.
In interpreting administrative regulations due respect must be accorded to the meaning given these regulations by the agency which promulgated them. Colbath v. United States, 169 Ct. Cl. 414, 341 F. 2d 626 (1965). Harris v. United States, 153 Ct. Cl. 425 (1961). In this case the Regional Office of the Civil Service Commission decided that
the Commission’s Regulations and Instructions clearly indicate that movements or assignments entirely within a competitive area are not considered to be transfers of function. Such shifts are reorganizations within the competitive area, and if any employees are to be separated or demoted as a result of the shifts, the reduction in force procedures must be applied.
We agree with this interpretation of the regulation and therefore uphold the decision of the Commission that no *270 transfer of function took place. Norfolk and Leesburg are located in the same competitive area — FAA Region 1.
It should also be noted that even when a transfer of function does occur, an agency is not required to separate employees who decide not to accept the opportunity to accompany the transfer. This is made clear in Supplement No. 1 to the Civil Service Commission’s Departmental Circular No. 740, promulgated on September 27, 1954, and referred to extensively in our decision in Colbath v. United States, supra. The transferring agency may, at its discretion, either separate the employee or permit him or her to exercise retreat rights under applicable reduction-in-force procedures.
Concerning plaintiff’s second ground for recovery, i.e., that the Administrative Assistant position is not within the same competitive area as the two stenographic positions, the Regional Office found that:
The record discloses that FAA has consistently considered the competitive area for Clerical and Administrative positions to be the local commuting area of the place of employment, not the entire region. We do not feel that the FAA Regulations exclude Administrative positions from the competitive area of general clerical, stenographic and typist positions.
The Board of Appeals and Review similarly held that:
The Federal Aviation Agency regards the Norfolk commuting area as a competitive area for reduction-in-force purposes for all clerical and administrative employees. Such a competitive area is in accord with the Retention Preference Regulations * * *.
Plaintiff contends that the duties of the Administrative Assistant are clearly not included within the category of “General clerical, typists, or other positions which traditionally have been filled on a local basis.” To substantiate this contention she points to the duties of the Administrative Assistant: (1) Initiating personnel actions, (2) briefing the air controllers on the latest directives received from the central office, and (3) general supervision of the office force in its secretarial duties. The plaintiff also contends that the position of Administrative Assistant was not filled on a local basis but rather advertised throughout the region. Yet she *271 offers no substantiating proof of this statement and tbe Civil Service Commission has stated that the FAA does hire Administrative Assistants on a local level. Unless there is evidence to the contrary, it is assumed that the agency acted lawfully and in accord with its regulations. Batchelor v. United States, 169 Ct. Cl. 180 (1965), cert. denied, 382 U.S. 870 (1965). Keeping in mind that we are here dealing with the interpretation of regulations by the agency which promulgated the regulations, we hold that the FAA properly included the position of Administrative Assistant within the competitive area of “general clerical, typists * * The exercise of retreat rights was therefore proper and plaintiff was correctly reached for reduction in force.
Since the action of the FAA. was neither contrary to the regulations nor arbitrary, it is upheld and the petition is dismissed.
EINDINGS OF FACT
The court, having considered the stipulation of the parties, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is, and at all times material to this suit has been, a citizen of the United States, residing at 1825 While Lane, Norfolk, Virginia.
2. From February 8, 1959 to August 29,1963, plaintiff was employed as a Clerk-Stenographer at the Norfolk Systems Maintenance Office, a part of the Norfolk, Virginia facility of the Federal Aviation Agency (hereinafter referred to as “FAA”). Plaintiff was a non-veteran career civil servant. Plaintiff was separated from her position, in which she had held the grade of GS-4, on August 29, 1963 as the result of a reduction in force.
3. In November 1962, the FAA inaugurated a program of phasing out and consolidating nine Air Traffic Control Centers. The program was announced in an internal newspaper published by the agency. The Air Route Traffic Control Center at Norfolk was affected by this program. Prior to the institution of the program, the Norfolk facility of the FAA had performed a dual operation. First, it was an Air *272 Route Traffic Control Center, the mission of which was the control and guidance of aircraft enroute between airports other than the local airports at Norfolk. Second, it operated a local control tower, which controlled the operation of aircraft to and from local airports. These two primary missions were performed by a combined Center/Tower. The Norfolk facility also included a Systems Maintenance Division Office, which had responsibility for the maintenance and repair of the equipment used at the combined Center/Tower.
4. The actual control and guidance functions of both the Air Route Traffic Control Center and the local control tower were performed by Air Traffic Controllers. There were 109 such employees serving at Norfolk. A typical job description covering one of the Air Traffic Controllers indicates that they:
(1) Perform flight data duties. This involves communicating with the pilots of aircraft airborne and under the control of the Norfolk Tower, issuing orders and information to those pilots. This was the primary duty of the controllers.
(2) Perform ground control duties involving control of aircraft and other traffic on all parts of the airport with the exception of runways.
(3) Pre-plan the sequencing of traffic prior to the time it enters the area under local control jurisdiction.
(4) Formulate and issue traffic clearances and control instructions to aircraft operating under Visual Flight Rules and within the jurisdiction of the facility.
Service and support for the Air Traffic Control function (i.e., maintenance and repair of equipment and the paperwork associated with both the Air Traffic Control and the maintenance operations) was provided by repair and maintenance technicians, who worked from the Systems Maintenance Division Office, and by administrative and clerical personnel. Prior to the reduction in force, there were four individuals who performed administrative and clerical duties at Norfolk. One of these employees was a temporary Clerk-Stenographer ; her position was abolished and is not relevant to the disposition of this case. The position of Administrative Assistant, GS-7, was occupied by Mrs. Martha E. Reece. *273 A copy of the job description for her position, which contains a true and accurate description of the duties actually performed by her, indicates that she was responsible for the administrative, housekeeping and personnel functions necessary to the operation of the Norfolk facility. This involved:
(1) Initiating personnel actions and preparing justifications, docmnentation or explanations supporting such actions; and advising the Chief Controller and his assistants on the rules, regulations and policies governing classification, placement, performance ratings, handling of grievances and other personnel work.
(2) Briefing the Chief Controller and his assistants on interpretation of Standard Practice, Regional and Washington Office Circular Letters and other directives ; and passing on to all employees the material in manuals or directives that is of interest to them.
(3) Planning and establishing systems required to provide for orderly maintenance of all Center records.
(4) Devising procedures for local implementation of personnel studies required by Washington and Regional Office directives.
(5) Maintaining property records, conducting inventories, obtaining supplies and equipment and assuring janitorial and other services.
(6) Supervising the work of from one to three clerical employees.
The position of Secretary (Stenographer), GS-5, was filled by Mrs. Frances A. Loher. Both Mrs. Reece and Mrs. Loher worked at the Combined Center/Tower. Plaintiff held the remaining position. The job description for her position, which accurately sets forth the duties she actually performed, states that she served as one of a group of personnel performing a variety of clerical, typing and stenographic duties. These entailed:
(1) Taking dictation of letters, reports, memoranda, agreements and a variety of other material involving technical words and phrases pertaining to Air Navigation Facilities.
(2) Maintaining a variety of files; filing and safeguarding material of a restricted or confidential nature; classifying material into the most descriptive subject headings and cross-referencing it; and performing *274 special searches for material when the information is meager or incomplete.
(3) Beading and routing of incoming mail; recording mail as required and following up on action items; reading and checking outgoing mail for completeness and readiness for dispatch.
(4) Answering the telephone and greeting and referring visitors; furnishing information as to publications, etcetera; making appointments for officials and keeping a calendar of appointments; arranging for conference space, notifying conference participants, and assembling necessary background materia,!.
(5) Performing a variety of miscellaneous tasks in connection with supplies, travel time and leave; operating copying devices and maintaining a library of manuals, publications, etcetera.
5. The Norfolk facility was at all material times a part of Begion 1 of the FAA. Begion 1, with headquarters at Kennedy International Airport, New York, comprised the states of New York, Ohio, Pennsylvania, Maine, Maryland, Massachusetts, Virginia, West Virginia, Kentucky, Connecticut, Vermont, New Hampshire, Delaware and Bhode Island. At the time the reduction in force took effect, the FAA classified employees at the Norfolk facility into two competitive areas. Under Part 3, section 3331.4 of the applicable FAA regulation, all employees within a single region, except administrative and clerical employees, were considered to be within the same competitive area. The competitive area for administrative and clerical employees was the local commuting area, i.e., the locality within which employees customarily commuted to work.
6. Under the FAA’s consolidation program, the Air Boute Traffic Control Center at Norfolk was consolidated with the Washington Center at Leesburg, Virginia. Many of the Air Traffic Controllers who had performed duties at Norfolk in connection with the Air Boute Traffic Control Center there were transferred to Leesburg. Obviously not everyone could remain at Norfolk and the Personnel and Training Division, Eastern Begion, determined which individuals would remain at Norfolk and which would leave by applying a retention-point system. Administrative and *275 clerical personnel were not transferred. After the consolidation. took effect, all that remained at Norfolk was the local control tower. While some Air Traffic Controllers remained at Norfolk, the effect of the relocation was 'to decrease the overall workload at that facility and to reduce the number of administrative and clerical personnel as well as the number of repair and maintenance technicians needed to serve the control tower. As a consequence, the position of Administrative Assistant, GrS-7 was abolished. The holder of that position, Mrs. Eeece, was permitted to retreat to the position of Secretary (Stenographer), GrS-5, and the incumbent of the position of Secretary (Stenographer) in turn was permitted to retreat to the position of Clerk-Stenographer, QS-4 previously held by plaintiff. At the date of the reduction in force, the retention registers for each of these positions were as follows:
1. ADMINISTRATIVE ASSISTANT (A-204) GSQ341-7(18)
S. O. Pate
RETENTION SUBGROUP
IB Reece, Martha E. *4-19-43
(Plus four years credit for “O” rating.)
2. SECRETARY (STBNO) (NY-3553) GS318-5(28) S. O. Pate
RETENTION SUBGROUP Bober, Prances A. *9-30-53
(Plus four years credit for “O” rating.)
3. CLERK-STENOGRAPHER (NY-4394) G-S-312-4 S. C. Pate
RETENTION SUBGROUP
IB Baldwin, Josephine 2-8-54
The FAA determined that there were no suitable vacancies for plaintiff within the agency in the local commuting area to which she had retreat rights.
7. On July 12,1963, plaintiff was served with a reduction-in-force notice which read in pertinent part as follows:
The position of Administrative Assistant, GrS-7, at the Norfolk, Virginia Tower Facility is being abolished be *276 cause of revised Air Traffic Division, staffing requirements for Fiscal Year 1965. The incumbent of this position has been offered retreat rights to the position of Secretary (Stenography) GrS~5, at the same Facility. The Secretary (Stenography), GS-5, in turn has retreat rights to the position of Clerk-Stenographer, GrS — 1, which you currently occupy.
Since 'there are no suitable vacancies in the Norfolk commuting area in which you can be placed, we find it necessary to separate you by Reduction-in-Force effective August 16, 1963. This memorandum constitutes the 30 days notice as required under existing Civil Service Regulations.
The notice transmitted to plaintiff copies of the retention registers applicable to the three administrative and clerical positions affected by the reduction in force together with a document entitled Separated Career Employee Program which furnished the following information:
(1) That plaintiff would have her name entered on the Reemployment Priority List which meant that she would be considered for placement for a period of two years.
(2) That plaintiff could file application for placement assistance under the Separated Career Program with the U.S. Civil Service Commission.
(3) That under the Separated Career Program, priority referral and certification would be given her for vacancies.
The reduction-in-force notice further stated that plaintiff’s separation would be effective on August 16, 1963. The notice also notified plaintiff of her right to appeal and the procedure for doing so.
8. On July 12,1963, the Chief of the Personnel and Training Division of Region 1 wrote a letter to plaintiff. In that letter, plaintiff was informed that there were five employment vacancies within the Region for which she was qualified, and she was invited to indicate her interest in one of these openings. None of the positions referred to in this letter was in the Norfolk area.
9. Plaintiff’s reply, dated July 30, 1963, rejected the offer of other jobs on the ground that each was too far away from her home. She also asked why she had not been offered a *277 GS-4 position at the Cape Charles, Virginia facility of the FAA. She alleged that the GS-4 position was being held by a probationary employee.
10. The Agency’s reply, dated August 6, 1963, advised plaintiff that the Cape Charles facility was not considered to lie within the Norfolk commuting area, and that she therefore had no retreat rights to the incumbered position at that location. Cape Charles, Virginia is at the other side of the Chesapeake Bay from Norfolk. At this time, the only means of travel from Norfolk to Cape Charles was by ferry. The one-way cost of the ferry for a driver and his automobile was $3.85.
11. By a Standard Form 50, Notification of Personnel Action, plaintiff was separated from her federal employment effective on August 16, 1963. After plaintiff had protested that the separation date as set forth on this form would deprive her of payment for unused annual leave, an amended Form 50 was issued, which changed her separation date to August 29,1963. Her pay was adjusted to reflect this change.
12. By a letter dated August 17, 1963 to the Chief of the Personnel and Training Division, FAA, plaintiff gave notice of her intention to appeal her separation to the Civil Service Commission, and she requested that the reduction in force be suspended pending a hearing on her appeal.
13. Thereafter, the President of the American Federation of Government Employees (which plaintiff had designated to be her representative before the Civil Service Commission) sent a formal letter of appeal to the Philadelphia Regional Office which read as follows:
This is an appeal in behalf of Mrs. Josephine M. C. Baldwin from the action of the Federal Aviation Agency in separating Mrs. Baldwin from the position of Clerk-stenographer GS-4 with that Agency, at Norfolk, Virginia, effective August 16, 1963, by reduction-in-force.
According to the reduction-in-force notice, the appellant, a sub-group 1 b employee, was listed alone in a competitive level of Clerk-stenographer GS-4. Her service date is February 8, 1954. A GS-5 employee, who was offered retreat rights to Mrs. Baldwin’s position, is also a sub-group 1 b with a service date of Sep *278 tember 30,1953, and an outstanding rating. The entire •bumping action was triggered by the alleged abolishment of the position of Administrative Assistant GS-7 at the Norfolk, Virginia Tower Facility. The incumbent of that position was offered the right of retreat to the GS-5 position which was occupied by the individual who displaced the appellant.
We are enclosing for your information, a memorandum dated April 11, 1963, the subject of which is “Transfer of Norfolk Enroute Function.” This memorandum refers to a transfer of function involving a number of employees to the Washington Center. The names of the controllers who were affected are identified in this memorandum. It is our understanding that they had the choice of transfering to the Washington Center, or resigning, or retiring. The position of Administrative Assistant GS-7, occupied by Mrs. Martha Reece and the GS-5 position to which reference has been made, were identifiable with the function transferred. It, therefore, appears that Mrs. Reece who occupied the grade 7 position should have been required to accompany the transfer of function and that no exception should have been granted. We could understand, where an employee is reluctant to transfer to some other location, that an exception may be made if there is a vacancy available in the Norfolk Area to which the person could be assigned. In other words, the Agency has initiated two separate actions. The controllers had the choice of either transferring, resigning, or retiring, whereas Mrs. Reece was allowed to retreat under reduction-in-force procedures, resulting in the loss of grade to one employee and the separation of the appellant.
It is also our understanding that bumping under the retreat provision of the regulations is limited to the competitive area. It is noted that the retreat rights as defined by agency regulations read in pertinent part as follows: “All employees of a region with the exception of general clerical, typists and stenographers are in a single competitive area which encompasses the entire region. General clerical, stenographers and other positions which traditionally have been filled on a local basis will be placed in competition within the local area.” In view of the foregoing, it appears that the GS-7 position occupied by Mrs. Reece was in a different competitive area from the GS-4 position occupied by the appellant.
In concluding, we respectfully request that the Region carefully determine whether Mrs. Baldwin was properly *279 listed and reached in the competitive level in which she was listed, whether the Agency violated its own regulations by allowing Mrs. Reece to retreat across competitive areas and whether it was proper to use reduction-in-force procedures in her case when the function with which her position was identified was transferred to the Washington Center.
14. On September 19,1963, the Regional Office of the Civil Service Commission replied to plaintiff’s letter of August 17. The reply stated that a suspension of a reduction in force pending an appeal was not authorized, and that if the appeal were decided in plaintiff’s favor “corrective action would then be required.” The letter also advised plaintiff that an investigation was underway to ascertain whether a full hearing would be warranted.
15. Thereafter, jurisdiction over plaintiff’s appeal was transferred to the New York Regional Office of the Civil Service Commission, which conducted a full and complete investigation into all of the facts and circumstances surrounding the reduction in force at the Norfolk facility of the FAA, with particular reference to the decision to separate plaintiff as a result of that proceeding.
16. On October 23, 1963, the New York Regional Office notified plaintiff that her reduction-in-force appeal had been denied. She was told, in this Regional Office letter, that:
When a reduction in force becomes necessary, the employing agency administratively decides what kinds of positions must be abolished. The agency’s decision to abolish one kind of position instead of another is not subject to review by the Commission. The Commission’s jurisdiction extends to determination that the employee adversely affected is properly reached in his relative retention order and is given reassignment consideration to which he may be entitled.
She was further advised that she was properly reached for reduction in force and that her claim for assignment rights to the position of GS-4 Stenographer at Cape Charles, Virginia was properly denied by Federal Aviation Agency because the facility at Cape Charles was not within the commuting area of Norfolk, Virginia. With reference to her contention that the -GrS-7 Administrative Assistant and the GrS-5 Secretary *280 (Stenographer) were not entitled to “bumping rights” she was told that:
We do not feel that the FAA Regulations exclude Administrative positions from the competitive area of general clerical, stenographic, and typist positions. Further, the Commission’s Regulations and Instructions clearly indicate that movements or assignments entirely within a competitive area are not considered to be a transfer of function. Such shifts are reorganization within the competitive area, and if any employees are to be separated or demoted as a result of the shifts, the reduction in force procedures must be applied.
It is our opinion that your agency properly applied the reduction m force regulations in your case. The elimination of the Administrative Assistant, GS-7 position at Norfolk was required when the Norfolk facility changed from a combined Center-Tower to a Tower. The administrative workload at a Tower does not warrant an Administrative Assistant, GS-7.
17. Plaintiff, by a letter dated October 25, 1968 appealed the decision of the Regional Office to the Board of Appeals and Review of the Civil Service Commission. A further letter from the American Federation of Government Employees to the Chairman of the Board of Appeals and Review, dated November 4, 1963, stated that the appeal was based on the same grounds raised in the August 23 letter to the Regional Office.
18. After a further investigation of the case, the Board of Appeals and Review, on May 7,1964, sustained the action of the New York Regional Office. In pertinent part, this decision stated that:
The Federal Aviation Agency regards the Norfolk commuting area as a competitive area for reduction in force purpose for all clerical and administrative employees. Such a competitive area is in accord with the Retention Preference Regulations, and the Board finds that the positions of Mrs. Reece, Mrs. Loher and Mrs. Baldwin were properly treated as being within the Norfolk competitive area. The Board has reviewed the facts and circumstances surrounding the reassignment of a number of Air Traffic Control Specialists from Norfolk to Washington, but finds no basis for a conclusion that the agency *281 would have been precluded from abolishing the position of Administrative Assistant, GS-7, at Norfolk and permitting Mrs. Reece, the incumbent of that position, to exercise retreat rights in a reduction-in-force action.
It was also held that plaintiff had no retreat rights to the incumbered position at Cape Charles since, in view of the distance of that facility from Norfolk and the inconvenient means of transportation from Norfolk to that location, it did not lie within the Norfolk commuting area.
1.9. By a letter dated May 28,1964, the American Federation of Government Employees, acting on plaintiff’s behalf, appealed the decision of the Board of Appeals and Review to the Civil Service Commission.
20. By a letter dated August 12,1964, the Commission advised plaintiff’s representative that the Commissioners had sustained the decision of the Board of Appeals and Review and upheld the validity of plaintiff’s separation.
21. This suit was instituted by a petition filed on September 10,1964.
CONCLUSION OS' LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is dismissed.

The summary of facts given in the body of the opinion is taken entirely from the Stipulation of Pacts prepared by the parties to this action. All the material facts necessary to determine plaintiff’s right to recovery have been stipulated and the case is brought to the court pursuant to Rule 58(b) (2) for a determination of the legal issues involved.

 Part 3 of the Standard Practice Manual of the Civil Aeronautics Agency, entitled ‘‘Personnel,” provides in part:
“3331. Competitive Area — The CAA is divided into competitive areas within which employees compete in reductions in force. These areas are defined below.
“.4 Regions One through Six — Bach Region is a competitive area, separate and distinct from any other Region or Other Major Field Organization, or Washington Oflice. All employees of a Region, with the exception of general clerical, typists, and stenographers, are in a single competitive area which encompasses the entire Region. General clerical, typists, or other positions which traditionally have been filled on a local basis will be placed in competition within the local commuting area.”
These CAA regulations were carried over to the FAA pursuant to section 1501(a) of the Federal Aviation Act of 1958, 72 Stat. 731, at 809, and by order of the Administrator, FAA, 24 F.R. 4 (January 1, 1959).

The “Outstanding” rating entitles employee to 4 additional retention credits, thereby adjusting the Service Computation Date to 4-19-39.

The “Outstanding” rating entitles employee to 4 additional retention credits, thereby adjusting the Service Computation Date to 9-30-49.